FILED

12/11/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs June 27, 2017

**STATE OF TENNESSEE v. ZACHARY EVERETT DAVIS**

**Appeal from the Criminal Court for Sumner County**
**No. 754-2014      Dee David Gay, Judge**

_____

**No. M2016-01579-CCA-R3-CD**
_____

D. KELLY THOMAS, JR., J., concurring, in which CAMILLE R. MCMULLEN, J., joins.

I concur in the results reached by the majority but write separately to express my policy concerns regarding the Defendant's sentence. With regard to the Defendant's sentence of imprisonment for life, Judge Holloway, in the majority opinion, concludes that the Defendant's sentence is constitutional because the United States Supreme Court's precedents in Miller v. Alabama, 567 U.S. 460 (2012) and its progeny are not violated in that the Defendant did not receive a mandatory sentence of life without parole. I am compelled to agree that our statutory sentencing scheme for first degree murder does not violate the strict holdings of those cases. However, it is my fear that the reality of our sentencing provisions, when applied to juveniles, may run afoul the spirit of those opinions.

In Miller, the United States Supreme Court held that mandatory life imprisonment without parole for those under the age of eighteen at the time of their crime violates the Eighth Amendment's prohibition on cruel and unusual punishments. 567 U.S. 460, 465 (2012). The court explained that right "flows from the basic precept of justice that punishment for crime should be graduated and proportioned to both the offender and the offense." Id. at 469 (citing Roper v. Simmons, 543 U.S. 551, 560 (2005)). The court further explained that when considering life without parole sentences imposed on juveniles, "the concept of proportionality is central to the Eighth Amendment." Id. at 469 (quoting Graham v. Florida, 560 U.S. 48, 59 (1962)). The court summarized precedent regarding juveniles as follows:

> To start with the first set of cases: Roper and Graham establish that children are constitutionally different from adults for purposes of sentencing. Because juveniles have diminished culpability and greater prospects for reform, we explained, "they are less deserving of the most severe punishments." Graham, 560 U.S. at 68. Those cases relied heavily

on three significant gaps between juveniles and adults. First, children have a "lack of maturity and an undeveloped sense of responsibility," "leading to recklessness, impulsivity, and heedless risk-taking. Roper, 543 U.S. at 569. Second, children "are more vulnerable . . . to negative influences and outside pressures," including from their family and peers; they have limited "control over their environment" and lack the ability to extricate themselves from horrific, crime-producing settings. Id. And third, a child's character is not as "well formed" as an adult's; his traits are "less fixed" and his actions less likely to be "evidence of irretrievable depravity." Id. at 570.

Miller, 567 U.S. at 471.

The Miller Court envisioned that a sentence "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Id. at 480. In addition, the Court "explained that a lifetime in prison is a disproportionate sentence for all but the rarest of children, those whose crimes reflect 'irreparable corruption.'" Montgomery v. Louisiana, --- U.S. ---, 136 S. Ct. 718, 726 (2016) (quoting Miller, 567 U.S. at 479-80). In Montgomery, the Court concluded that "Miller did bar life without parole, however, for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." Id. at 734.

The Montgomery Court further explained that "Miller requires a sentencer to consider a juvenile offender's youth and attendant circumstances before determining that life without parole is a proportionate sentence." Montgomery, 136 S. Ct. at 734 (citing Miller, 567 U.S. at 483). The Court stated that while Miller established a new substantive rule of constitutional law, the Court was "careful to limit the scope of any attendant procedural requirement to avoid intruding more than necessary upon the States' sovereign administration of their criminal justice systems." Id. at 735 (citing Ford v. Wainwright, 477 U.S. 399, 416-17 (1986)). However, Miller's failure to "impose a formal fact-finding requirement does not leave States free to sentence a child whose crime reflects transient immaturity to life without parole." Id. at 735. Miller established that such "punishment is disproportionate under the Eighth Amendment." Id.

Tennessee Code Annotated section 39-13-202 requires that when a defendant is convicted of first degree murder, the defendant shall receive one of the following: (1) a sentence of death; (2) a sentence of life without the possibility of parole; or (3) a sentence of life.

Release eligibility for each defendant receiving a sentence of imprisonment for life for first degree murder shall occur after service of sixty percent of sixty years less sentence credits earned and retained by the defendant, but in

-2-

no event shall a defendant sentenced to imprisonment for life be eligible for parole until the defendant has served a minimum of twenty-five full calendar years of the sentence[.]

Tenn. Code Ann. § 40-35-501(h)(1). Furthermore,

[t]here shall be no release eligibility for a person committing an offense, on or after July 1, 1995, that is enumerated in subdivision i(2). The person shall serve one hundred percent of the sentence imposed by the court less sentence credits earned and retained. However, no sentence reduction credits . . . shall operate to reduce the sentence imposed by the court by more than fifteen percent.

Tenn. Code Ann. § 40-35-501(i)(1). Murder in the first degree is one of the enumerated offenses under this statute. See Tenn. Code Ann. § 40-35-501(i)(2)(A). Thus, a defendant convicted of first degree murder who receives a life sentence must first serve at least fifty-one years of incarceration or eighty-five percent of the sixty-year sentence. As noted in the majority opinion, prior decisions by this court have held that a life sentence for first degree murder does not implicate the constitutional rule of Miller and its progeny. See generally State v. Deshun Hampton, No. 2015-00469-CCA-R3-CD, 2016 WL 6915581 (Tenn. Crim. App. Nov. 23, 2016), perm. app. denied (Tenn. Apr. 12, 2017); Charles Everett Lowe-Kelley v. State, No. M2015-00138-CCA-R3-PC, 2016 WL 742180, at *8-9 (Tenn. Crim. App. Feb. 24, 2016), perm. app. denied (Tenn. June 23, 2016); Kenneth A. Adams v. State, No. W20140-02160-CCA-R3-PC, 2015 WL 5680228, at *2 (Tenn. Crim. App. Sept. 28, 2015), perm. app. denied (Tenn. Nov. 30, 2015); Billy L. Grooms v. State, No. E2014-01228-CCA-R3-HC, 2015 WL 1396474, at *4 (Tenn. Crim. App. Mar. 25, 2015), perm. app. denied (Tenn. July 21, 2015), cert. denied, 136 S. Ct. 1216 (2016); Kayln Marie Polochak v. State, No. M2013-02712-CCA-R3-CD, 2015 WL 226566, at *36 (Tenn. Crim. App. Jan. 16, 2015), perm. app. denied (Tenn. May 14, 2015); Cyntoia Denise Brown v. State, No. M2013-00825-CCA-R3-PC, 2014 WL 5780718, at *21 (Tenn. Crim. App. Nov. 6, 2014), perm. app. denied (Tenn. May 15, 2015); Floyd Lee Perry, Jr., v. State, No. W2013-00901-CCA-R3-PC, 2014 WL 1377579, at *5 (Tenn. Crim. App. Apr. 7, 2014); perm. app. denied (Tenn. Sept. 18, 2014).

In Tennessee, both juveniles and adults convicted of first degree murder are treated exactly the same. I feel constrained to observe that, although Tennessee's sentencing scheme allows for possible release of a defendant convicted of first degree murder after the service of fifty-one years, it is only in the rare instance, if ever, that a juvenile so sentenced would be released back into society. Even if the judge or jury decides that the features of the juvenile or the circumstances of the homicide require a

sentence other than life without parole, the effect of the sentence is still the same. The juvenile has no meaningful opportunity for release whether you name the sentence imprisonment for life or imprisonment for life without the possibility of parole, and the juvenile will likely die in prison. "While the logical next step may be to extend protection to these types of sentences, that is not the precedent which now exists" in this State. Perry, 2014 WL 1377579, at *4.

However, other states have decided to extend the holding in Miller under similar circumstances. See generally Vasquez v. Com., 781 S.E.2d 920, 934 (Va. 2016) ("The Court's holdings in Miller and Montgomery support the conclusion that any distinction between explicit and de facto life sentences without parole is one without a difference . . . . We cannot ignore the reality that a seventeen year-old sentenced to life without parole (Graham) and a sixteen year-old sentenced to a term of years beyond his lifetime (Vasquez) have effectively received the same sentence. Because both sentences deny the juvenile the chance to return to society, Graham applies to both sentences."); State v. Pearson, 836 N.W.2d 88, 96 (Iowa 2013) ("Though Miller involved sentences of life without parole for juvenile homicide offenders, its reasoning applies equally to Pearson's sentence of thirty-five years without the possibility of parole for these offenses. Therefore, we think a minimum of thirty-five years without the possibility of parole for the crimes involved in this case violates the core teachings of Miller." (citations omitted)); Funchess v. Prince, No. CV 14-2105, 2016 WL 756530, at *5 (E.D. La. Feb. 25, 2016) (examining "a sentence of life without parole for a period of [forty] years" and the attendant "obstacles" to obtaining parole "under Louisiana's 'two-step parole procedure'" and concluding that "for all intents and purposes" such a sentence equates "to a mandatory life sentence with no meaningful opportunity to obtain release" in violation of Miller and Montgomery). Furthermore, in reversing the imposition of consecutive sentences of life without parole on a juvenile defendant, a panel of this court discussed its misgivings regarding such sentences in light of the Supreme Court's repeated emphasis that "children are constitutionally different than adults, [Montgomery, 136 S. Ct.] at 736," and its warnings against the imposition of excessive punishments against juvenile offenders. Jacob Brown v. State, No. W2015-00887-CCA-R3-PC, 2016 WL 1562981, at *7 (Tenn. Crim. App. Apr. 15, 2016), perm. app. denied (Aug. 19, 2016), cert. denied, 137 S. Ct. 1331 (2017). Though the court in Brown concluded that the petitioner's sentence of life without parole in this case did not violate the Eighth Amendment prohibition on cruel and unusual punishment because the sentencing procedure utilized in that case was sufficient to support such sentences, the court ultimately held "that consecutive alignment of the petitioner's sentences [did] not comport with the recent rulings of the United States Supreme Court." Id. at *8.

Nonetheless, I feel bound by the precedent from this court on the subject and, therefore, agree with the majority opinion's conclusion. Additionally, I note that our

supreme court has denied permission to appeal on the multiple cases from this court affirming a life imprisonment sentence for a juvenile and that the United States Supreme Court has denied certiorari in Grooms, wherein this court concluded that imposition of mandatory life sentences to be served concurrently did not violate Miller. Accordingly, I concur. I am authorized by Judge Camille R. McMullen to say that she also joins in this concurring opinion.

_____
D. KELLY THOMAS, JR., JUDGE